**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH FRAPANPINA III, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 19-cv-00493 |
| v. | ) ) | Judge John Robert Blakey |
| GARDA CL GREAT LAKES, INC., | ) ) | Magistrate Judge Michael T. Mason |
| Defendant. | ) ) ) | |

**GARDA'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Joseph Frapanpina ("Frapanpina"), a former driver/messenger for Defendant armored car company Garda CL Great Lakes, Inc. ("Garda"), filed this purported collective/class action seeking overtime wages under the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL"). Garda now moves for summary judgment on Frapanpina's individual claims.[1] Because Frapanpina falls within the Motor Carrier Act ("MCA") exemption to these statutes' overtime provisions, Garda is entitled to summary judgment.

**I.     FACTS**

Garda is a secured transportation service company that provides armored vehicle transportation.[2] Frapanpina was a driver/messenger at Garda's Broadview, Illinois branch from before January 2016 to November 2018.[3] The parties agree that Garda is engaged in interstate commerce within the meaning of the FLSA and that Frapanpina was engaged in interstate

---

[1] The parties proposed [Dkt 22], and the Court approved [Dkt 28], that this action would proceed initially on Frapanpina's individual claims.

[2] Defendant Garda CL Great Lakes, Inc.'s Local Rule 56.1 Statement of Material Facts In Support of Motion For Summary Judgment [DSMF], ¶ 1.

[3] DSMF, ¶ 2.

commerce.[4] Driver/messengers transport coin, currency, checks, negotiable instruments, and other valuables to and from customers, including transporting coin and currency to and from Milwaukee, Wisconsin and Indianapolis, Indiana five days a week.[5]

Garda's Broadview branch utilizes a fleet of **approximately 70** armored vehicles.[6] The majority of these vehicles have a gross vehicle weight rating ("GVWR") of 10,001 pounds or more ("large vehicles"); a limited number of vehicles have a GVWR of less than 10,001 pounds ("small vehicles").[7] Frapanpina was a driver/messenger in large and small vehicles for Garda.[8]

Garda is a Federal Motor Carrier Safety Administration ("FMCSA") certified company and holds U.S. Department of Transportation ("DOT") FMCSA Number USDOT # 163997.[9] This certification authorizes Garda to operate in interstate commerce and requires it to comply with FMCSA's rules, regulations, and procedures.[10] Garda maintains a "Driver Qualification File" for each driver that includes FMCSA-required documentation, and must submit to DOT audits to ensure its compliance with FMCSA regulations.[11]

---

[4] Compl. and Ans. ¶¶ 11 & 12; DSMF ¶¶ 7-8.

[5] DSMF, ¶¶ 5-6.

[6] DSMF, ¶ 13 (Frapanpina's dep. testimony). Garda's business records show that there were 59 vehicles at the Broadview branch, with 46 of the vehicles having a GVWR of 10,001 pounds or more. DSMF ¶ 13, n. 2. The differences between Frapanpina's and Garda's figures are not material to this motion. For purposes of summary judgment, Garda will accept Frapanpina's figures.

[7] DSMF, ¶ 13. According to Frapanpina: from 2016 through 2018 (the relevant time period), 57-62 (88%) of the Broadview branch's fleet were large vehicles; the fleet included 8 or more "reserve" vehicles that were used whenever a vehicle (large or small) was in the shop for maintenance or repairs; and the reserve vehicles were primarily large vehicles. DSMF, ¶¶ 13-15. According to Garda's records, 46 (78%) of the 59 vehicles were large vehicles. DSMF ¶ 13, n. 2. Garda accepts Frapanpina's figures for purposes of this motion. See n. 6.

[8] DSMF, ¶¶ 32-33.

[9] DSMF, ¶ 9. The FMCSA is an administration within the DOT responsible for regulating commercial motor carriers. *See* 49 U.S.C. § 113.

[10] DSMF, ¶ 9.

[11] DSMF, ¶ 10.

Driver/messengers are required to comply with FMCSA regulations, including completing required vehicle inspection reports, and are periodically trained in these requirements.[12] Frapanpina signed periodic acknowledgments of these requirements.[13]

The Broadview branch employs approximately 140 driver/messengers.[14] Any driver/messenger could be assigned either the driver or messenger role on any route or vehicle, including large vehicles, on any given day, at Garda's discretion and could be disciplined for refusing to work as assigned.[15] Garda requires that each driver/messenger possess a Commercial Driver License ("CDL") Class C, which, in Illinois, is required to drive a vehicle with a GVWR of 16,001-26,000 pounds.[16] Frapanpina held a CDL throughout his employment at Garda.[17] Frapanpina used large vehicles for at least 10 trips according to Garda's records.[18]

The terms of employment of driver/messengers at the Broadview branch are governed by a collective bargaining agreement ("CBA") between the United Armored Transporters of America and Garda.[19] The CBA provides for premium overtime wages of time-and-a-half after 50 hours per week, in exchange for a guarantee of 40 hours work per week or equivalent pay even if employees work less.[20] There is no dispute that Frapanpina was paid for all hours worked at the CBA rate of pay, including paying time-and-a-half after 50 hours per week, but he claims that not paying time-and-a-half for hours 41-50 per week violates the overtime provisions of the FLSA, 29 U.S.C. § 207, and the IMWL, 820 ILCS 105/4a. *See* Compl., ¶¶ 8, 13.

---

[12] DSMF, ¶¶ 11, 12, 23, 24.
[13] DSMF, ¶¶ 11, 34.
[14] DSMF, ¶ 16.
[15] DSMF, ¶¶ 19-21, 26, 29-30.
[16] DSMF, ¶ 22; https://www.cyberdriveillinois.com/departments/drivers/drivers_license/CDL/cdl.html (visited 6/15/2020).
[17] DSMF, ¶ 36.
[18] DSMF, ¶ 35.
[19] DSMF, ¶¶ 25, 28.
[20] DSMF, ¶¶ 27, 31.

Because Frapanpina is ineligible for overtime under the MCA exemption to the FLSA and IMWL, 29 U.S.C. § 213(b)(1); 820 ILCS 105/3(d)(7), Garda is entitled to summary judgment.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bridges v. Dart*, No. 19-1791 (7th Cir. Feb. 19, 2020). A "genuine issue" of material fact is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson, supra*; *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## III.     THE MOTOR CARRIER EXEMPTION

Garda moves for summary judgment on the ground that Frapanpina is exempt from the overtime provisions of the FLSA and IMWL under the MCA exemption as a matter of law. We take up the FLSA exemption issue first and address the IMWL exemption issue in Part V below. Specifically, the MCA exemption applies to the FLSA claim because (1) Garda's business involves interstate commerce; (2) Garda's vehicle fleet at its Broadview branch is composed mainly of large vehicles (*i.e.*, vehicles with a GVWR of 10,001 pounds or more); and (3)

4

Frapanpina was a driver/messenger who drove large vehicles at some points during his employment and was subject to being assigned to drive a large vehicle on any given day of his employment.

Frapanpina contends that he was nonexempt in the weeks that he worked in whole or in part on small vehicles. He urges this Court to undergo a week-by-week analysis to determine what size vehicle he (and the purported class members) worked on. As explained below, because Frapanpina was subject to being assigned to a large vehicle on any given day, he was exempt under the MCA exemption throughout his employment.

A.      The FLSA's Motor Carrier Exemption

The FLSA requires employers to pay overtime (one-and-a-half times the hourly wage) to employees who work more than 40 hours a week, subject to certain statutory exemptions. 29 U.S.C. § 207(a)(1); 29 U.S.C. § 213(a)-(b). One of these exemptions is the MCA exemption (also referred to as the motor carrier exemption), which provides that the FLSA's overtime provision shall not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49" of the MCA. 29 U.S.C. § 213(b)(1).

The purpose of the MCA exemption is primarily to ensure that matters affecting highway safety, especially maximum hours of service of operators of motor carriers, are regulated by an entity (DOT) with a greater understanding of the particular safety concerns. Through the MCA exemption, Congress has "prohibited the overlapping of ... jurisdiction" between the U.S. Department of Labor ("DOL"), which enforces the FLSA, and the DOT regarding "maximum hours of service." *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 661–62 (1947); *see also Almy v. Kickert Sch. Bus Line, Inc.*, 722 F.3d 1069, 1071 (7th Cir. 2013) (plaintiffs were "exempt

5

#72899827_v11

under the FLSA because the exclusive authority to set maximum hours for 'motor carriers' is vested in the Secretary of Transportation by...the [MCA]"); *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 660–61 (7th Cir. 2011). Employees who come under the DOT's jurisdiction are "exempt from the FLSA's maximum hour and overtime provisions pursuant to the FLSA's motor carrier exemption." *Id.* While many motor carrier employers engage in both intrastate and interstate commerce, an employee "cannot be subject to the jurisdiction of both the [DOL] and the [DOT] simultaneously." *Id.* Thus, so that the overtime provisions of the FLSA and the MCA do not overlap or interfere with each other, the MCA exemption provides that those employees whose working hours are regulated by the DOT are exempt from the FLSA's requirements.

An employer has the burden of showing that an employee is exempt from the overtime requirements of the FLSA. *Blanchar v. Standard Ins. Co.*, 736 F.3d 753, 756 (7th Cir. 2013) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)). The Supreme Court recently clarified that exemptions must be given "a fair reading" rather than the narrow interpretation in favor of a right to overtime previously employed by the courts. *Encino Motorcars, LLC v. Navarro*, -- U.S. --, 138 S. Ct. 1134, 1142 (2018).

As 29 C.F.R. § 782.2 explains, two considerations determine whether the MCA exemption applies: the class of the employer and the class of work the employees perform. *See* 29 C.F.R. § 782.2(a). Specifically, the MCA exemption applies if: (1) the employer is subject to the DOT's jurisdiction by virtue of being a motor carrier as defined by 49 U.S.C. § 31502(b); and (2) the employee "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation ... of ... property in interstate ... commerce ...." *Id.*

Both elements are satisfied here. The parties agree that Garda is a motor carrier that transports property and is engaged in interstate commerce, and thus is subject to the DOT's jurisdiction under the MCA.[21]

It is also undisputed that Frapanpina engaged in activities directly affecting the safety of operation of motor vehicles transporting property in interstate commerce. The parties agree that Frapanpina transported property and engaged in interstate commerce.[22] And as a driver/messenger, he engaged in activities of a character directly affecting the safety of operation of motor vehicles. *See* 29 C.F.R. §§ 782.3, 782.4 (providing that all drivers and drivers' helpers,[23] respectively, meet this safety criterion) and *Cantu v. Brink's Co.,* 185 F.Supp. 3d 846, 851 (N.D. Ill. 2016) (holding that an armored car "messenger" "clearly falls within the definition of 'drivers' or 'driver's helpers' under the [MCA]" and concluding that the messenger falls within the MCA exemption) (citing *Hernandez v. Brink's Inc.*, 2009 WL 113406, *4 (S.D. Fla. 2009)). However, that is not the end of the analysis.

**B.     The Exception to the FLSA's Motor Carrier Exemption**

Congress created an *exception* to the MCA exemption for certain motor carrier employees. In August 2005, Congress passed an amendment to the MCA called the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"). Pub. L. No. 109–59, 119 Stat. 1144 (2005). This amendment had the effect of removing from the DOT's jurisdiction motor carriers with respect to vehicles weighing 10,000 pounds or less and employees who did not operate a vehicle weighing at least 10,001 pounds and, thereby,

---

[21] Compl. and Ans. ¶ 11.

[22] Compl. and Ans. ¶ 12.

[23] A "driver's helper" is defined as "an employee other than a driver, who is required to ride on a motor vehicle" who, *inter alia*, "assist[s] in loading the vehicle[]." 29 C.F.R. § 782.4.

altering the class of employees exempt from the FLSA. See SAFETEA-LU § 4142(a), 119 Stat. at 1747.

In June 2008, however, Congress enacted the SAFETEA–LU Technical Corrections Act of 2008 ("TCA"). Pub.L.No. 110-244, 306(a), (c), 122 Stat. 1572, 1621 (2008). The TCA restored the DOT's authority to regulate motor carriers, regardless of the weight of the vehicle driven. 49 U.S.C. §13102 (16) (defining "motor vehicle"). The TCA also provided that the FLSA shall apply to a "covered employee" notwithstanding Section 213(b)(1) (the MCA exemption section) of the FLSA. TCA § 306 (codified in the notes section of 29 U.S.C. § 207). The TCA defines a "covered employee" in § 306 (c) as one:

    (1)    who is employed by a motor carrier …;

    (2)    whose work, in whole or in part, is defined —

        (A)    as that of a driver [or] drivers helper …; and

        (B)    as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, …; and

    (3)    who performs duties on motor vehicles weighing 10,000 pounds or less.

TCA, § 306 (c)(1)-(3).

Thus, the TCA effectively restored the pre-2005 jurisdiction of the DOT under the MCA, regardless of the weight of the vehicle. What the TCA arguably failed to specify, though, was whether employees who work on both vehicles weighing 10,001 pounds or more and vehicles less than 10,001 pounds would be exempt under the FLSA.

Employees bear the burden of proving that the exception in the TCA applies to them. *Carley v. Crest Pumping Technologies, LLC*, 890 F.3d 575, 579-80 (5th Cir. 2018) (because the TCA is codified under §207 of the FLSA, and employees bear the burden of proof under §207, employees bear the burden of proving that the TCA exception applies); *Walton v. United*

*Consumers Club, Inc.*, 786 F.2d 303, 307 (7th Cir. 1986) (plaintiffs bear the burden of proof as to matters under §207).

## IV.     FRAPANPINA IS EXEMPT FROM OVERTIME UNDER THE FLSA

The MCA exemption applies to Frapanpina. Because Frapanpina sometimes performed duties on motor vehicles weighing 10,001 pounds or more, he is not a "covered employee" within the meaning of the TCA and therefore is exempt under the MCA exemption.

### A.     The Seventh Circuit's *Collins v. Heritage Wine* Decision Requires Summary Judgment For Garda

This case is controlled by the Seventh Circuit's decision in *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895 (7th Cir. 2009). That case, like this one, involved a mixed fleet of trucks, some weighing 10,001 pounds or more and others weighing less than 10,001 pounds. The court rejected the argument that a week-by-week analysis is required to determine when an employee is exempt from overtime under the MCA:

> Some of the plaintiffs occasionally drove lighter trucks, and they argue that when they were doing that they were covered by the [FLSA]. But to divide jurisdiction in this way would be contrary to the Supreme Court's sensible decision in *Morris v. McComb*, 332 U.S. 422 [ ] (1947), which held that the employer of a driver who may sometimes be required to deliver goods in interstate commerce is subject to the [MCA] even if most of his driving is intrastate. Dividing jurisdiction over the same drivers, with the result that their employer would be regulated under the [MCA] when they were driving the big trucks and under the [FLSA] when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes.

*Id.* at 901 (citations omitted).

### B.     Judge Leinenweber, Applying *Collins,* Held In An Identical Case That Garda's Driver/Messengers at the Same Branch as Frapanpina Are Exempt From Overtime

The Honorable Harry D. Leinenweber of this district, applying *Collins*, ruled on this precise issue involving driver/messengers employed by Garda at the same Broadview branch

9

involved in this case. In a thorough and well-reasoned opinion in *Jaramillo v. Garda, Inc.,* No.

12-C-662, 2012 WL 4955932 (N.D. Ill. Oct. 17, 2012), Judge Leinenweber granted summary

judgment to Garda on the MCA exemption and held that Garda's driver/messengers are exempt

from the FLSA's and IMWL's overtime requirements.

After noting that the TCA failed to specify whether employees who work on both

vehicles weighing 10,001 pounds or more and vehicles less than 10,001 pounds would be

exempt, Judge Leinenweber explained his ruling:

> What this Court finds persuasive is the Seventh Circuit decision in *Collins v. Heritage Wine Cellars, LTD.*, 589 F.3d 895 (7th Cir. 2009). In Collins, *** Judge Richard Posner addressed the plaintiffs' additional argument which was that because some plaintiffs drove trucks lighter than 10,001 pounds between 2005 and 2008, the MCA exemption should not apply. Id. at 901. In rejecting this argument, Posner stated,
>
>> [d]ividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes.
>
> *Id.*
>
> The Court finds the plaintiffs' argument in *Collins* identical to the Plaintiffs' argument here, and as such, refuses to undergo a week-by-week analysis to determine what regulatory overtime scheme should apply to each individual Plaintiff for each week of work. The Court finds this would be, as Judge Posner stated, burdensome.

*Jaramillo*, slip op. 9-10.

*Jaramillo* also rejected the plaintiffs' argument that some of the plaintiffs should be non-

exempt because they used large vehicles so infrequently that those trips should be considered "*de*

*minimis*":

> Moreover, even Plaintiff Jaramillo, the individual Plaintiff who drove large vehicles the least amongst all other Plaintiffs, still drove large vehicles on 11 different occasions. The Court finds this to be a "reasonable amount of time," particularly because it is clear that Plaintiff Jaramillo could be expected to drive a

large vehicle on any given day of his employment with Garda. Indeed, Defendants have provided "concrete evidence" that all Plaintiffs could be expected to be a driver or messenger in a large vehicle on any given day of their employment. Id. Because of this, the Court finds Defendants have satisfied their burden of proof regarding each employee's exemption from FLSA.

Slip op. 12.

The plaintiffs' arguments in *Collins* and *Jaramillo* are identical to Frapanpina's argument here and as such, this Court should refuse to undergo a week-by-week analysis to determine what regulatory scheme should apply to Frapanpina for each week of work. Garda is entitled to summary judgment under the controlling precedent in *Collins*, just as *Jaramillo* held in applying *Collins* to driver/messengers at the same branch of Garda several years ago.

### C. Alternatively, Summary Judgment Is Required Because Frapanpina Fails to Prove that He Falls within the Exception to the MCA Exemption

It is undisputed that the DOT has authority to establish qualifications and maximum hours of service for Frapanpina and other driver/messengers at Garda. So unless Frapanpina carries his burden of proving that he meets the exception in the TCA, he is exempt from the FLSA's overtime requirement. Frapanpina has not met his burden of proof.

Specifically, the MCA exemption applies unless Frapanpina proves he satisfies all three elements of § 306 (c) of the TCA, which are connected by the word "and":

(1)     who is employed by a motor carrier …;

(2)     whose work, in whole or in part, is defined —

      (A)     as that of a driver [or] drivers helper …; and

      (B)     as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation or public highways in interstate or foreign commerce, …; *and*

(3)     who performs duties on motor vehicles weighing 10,000 pounds or less.

TCA, § 306 (c)(1)-(3) (emphasis added).

As shown below, both the text and structure of § 306 (c) confirm that workers do not meet the subsection (c)(3) prong of the TCA exception unless they *always* work on vehicles weighing 10,000 pounds or less. Because Frapanpina sometimes worked on vehicles weighing more than 10,000 pounds, and was subject to being assigned to a large vehicle at any time, he is exempt from the FLSA's overtime requirement under the MCA exemption.

An employee who drives a mix of heavy and light vehicles is plainly exempt under the MCA exemption. The TCA exception does not apply. TCA subsection (c)(2) provides that a covered individual is one "whose work, *in whole or in part*, is defined — (A) as that of a driver [or] drivers helper …; and (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less." (Emphasis added). It is a "fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (quotations omitted). As the TCA does not define "in whole or in part," we look to the dictionary. The most relevant entry defines "part" as "Some but not all of something." Lexico, US Dictionary, Powered by Oxford (def. 2), https://www.lexico.com/en/definition/part.[24] If subsection (c)(2) provided simply (without "in whole or in part" language) that a covered individual is one whose work affects the safety of a vehicle weighing 10,000 pounds or less, a speaker of the English language would interpret that to mean that driving such a vehicle all the time meets (c)(2). The natural meaning of adding "in whole or in part" is that the condition in (c)(2) is satisfied if it is present at any time, and that absent such phrase, the condition would be required all the time.

By contrast, subsection (c)(3) provides that a covered individual is one "who performs duties on motor vehicles weighing 10,000 pounds or less"—without the qualifier "in whole or in

---

[24] A "part" is a "portion or division of a whole" or a "certain amount, but not all, of any thing or number of things." 2 Oxford English Dictionary 497 (1971).

#72899827_v11

part." The absence of the words "in whole or in part" in (c)(3) immediately after their use in (c)(2) clearly signals that in order to satisfy (c)(3), one must exclusively perform duties on vehicles weighing 10,000 pounds or less.

If Congress had intended subsection (c)(3) to include individuals who in part perform duties on motor vehicles weighing 10,000 pounds or less, it knew how to say so. But it did not. Where Congress has simultaneously chosen to include language in one portion of a statute and to omit such language from a neighboring portion, we must assume the differences in language intend differences in meaning. *See Russello* v. *United States*, 464 U. S. 16, 23 (1983). This canon of construction applies with special force where, like here, Congress chose to use different language not just in different sections of a statute, but in consecutive portions of the same subsection. *See Bates* v. *United States,* 522 U.S. 23, 29–30 (1997).

Further, implying the words "in whole or part" in (c)(3) would render the words "in whole or in part" appearing expressly in (c)(2) mere surplusage. It is another canon of construction that we should not interpret Congress' words as mere surplusage, but must give meaning to every word that Congress chose to include—and to exclude. *Duncan* v. *Walker*, 533 U.S. 167, 174 (2001).

The structure of § 306 further reinforces the conclusion that an employee must always perform duties on vehicles weighing 10,000 pounds or less in order to meet the TCA exception. If Congress meant that "in whole or in part" also modified subsection (c)(3), it simply would have placed the text that is now (c)(3) as a new (c)(2)(C), so it was modified, like (c)(2)(A) and (B), by the prefatory "in whole or in part" in (c)(2). Instead, Congress included a separate subsection (c)(3), without the qualifier "in whole or in part." We must give meaning to how Congress organized § 306(c).

13

That Congress would want to put all employees who work on large vehicles for any portion of their time under the exclusive provision of the MCA is not unusual. Through the MCA exemption, as noted above, Congress has prohibited the overlapping of jurisdiction between the DOL and the DOT regarding maximum hours of service. Dividing jurisdiction over drivers who sometimes drive large vehicles and sometimes drive small vehicles would also be contrary to the Supreme Court's sensible decision in *Morris v. McComb*, *supra*, and would create practical problems as *Collins* held.

The record evidence amply establishes the applicability of the MCA exemption because Frapanpina always was subject to being assigned to a vehicle weighing 10,001 pounds or more and in fact was assigned to such a vehicle on multiple occasions. Frapanpina's claim of nonexemption under the FLSA must be rejected based on the controlling precedent in *Collins*, as applied to Garda itself by *Jaramillo*. The text of the TCA exception leads to the same conclusion.

For the foregoing reasons, Frapanpina is exempt from the FLSA's overtime requirement under the MCA exemption and Garda is entitled to summary judgment on his FLSA claim.

## V. FRAPANPINA IS ALSO EXEMPT FROM OVERTIME UNDER THE IMWL

Only an "employee" is entitled to overtime under the IMWL. 820 ILCS 105/4a(1) ("no employer shall employ any of his employees" for more than 40 hours a week without paying overtime). Frapanpina is excluded from the definition of "employee" by Section 3(d)(7) of the IMWL, which excludes any individual who works

> For a motor carrier and with respect to whom the U.S. Secretary of Transportation has the power to establish qualifications and maximum hours of service under the provisions of Title 49 U.S.C. [the MCA] or the State of Illinois under Section 18b-105 … of the Illinois Vehicle Code.

820 ILCS 105/3 (d)(7).

14

Since June 2008 (after which the claims in this case arose), the DOT has had authority to establish qualifications and maximum hours of service under the provisions of Title 49 U.S.C. (the MCA) for all motor carriers and their driver/messengers, regardless of the weight of the vehicle driven. See 49 U.S.C. § 13102(16) (2008) (defining "motor vehicle"). Because Frapanpina is an individual who worked for a motor carrier and with respect to whom the DOT has authority to establish qualifications and maximum hours of service, he is not an "employee" under the IMWL and therefore is not entitled to overtime under this statute. *Almy, supra* at 1074. Garda is also entitled to summary judgment on Frapanpina's IMWL claim.

## VI.    CONCLUSION

For the foregoing reasons, summary judgment should be entered for Garda.

Respectfully submitted,

GARDA CL GREAT LAKES, INC.,
Defendant

By:  /s/ Mark L. Shapiro
       One of Its Attorneys

Mark L. Shapiro (ARDC #2566753)
Phillip M. Schreiber (ARDC #6209973)
Jennifer J. Froehlich (ARDC #6295017)
Holland & Knight LLP
150 N. Riverside Plaza, Suite 2700
Chicago, Illinois 60606
312-263-3600
mark.shapiro@hklaw.com
phillip.schreiber@hklaw.com
jennifer.froehlich@hklaw.com

15

#72899827_v11