UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH FRAPANPINA III, on behalf of Himself and all other similarly situated, | |
| Plaintiff, | Case No. 19-CV-493 |
| v. | |
| GARDA CL GREAT LAKES, INC., | Judge John Robert Blakey |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joseph Frapanpina brings this collective action, claiming that his former employer, Defendant Garda CL Great Lakes, Inc., failed to pay him and other class members overtime in violation of the Fair Labor Standards Act of 1938 (FLSA) and the Illinois Minimum Wage Law (IMWL). Defendant moves for summary judgment on Plaintiff's individual claim. [51]. For the reasons explained below, this Court grants in part and denies in part Defendant's motion.

**I.   Background**

   **A.   Facts**

Defendant operates a secured transportation company that provides armored vehicle transportation. [52] at ¶ 1. At its branch in Broadview, Illinois, Defendant's business includes transporting coin, currency, checks, negotiable instruments, and other valuables to and from its customers. *Id.* at ¶ 5.

1

Defendant constitutes a Federal Motor Carrier Safety Administration (FMCSA) certified company and holds U.S. Department of Transportation (DOT) FMCSA Number USDOT 163997. *Id.* at ¶ 9. This certification authorizes Defendant to operate in interstate commerce and requires it to comply with FMCSA's rules, regulations, and procedures. *Id.*

From 2016 through 2018, the Broadview branch operated a fleet of 65 to 70 vehicles. *Id.* at ¶ 13. Of those vehicles, 57 to 62 had a gross vehicle weight rating (GVWR) of 10,001 lbs. or more (large vehicle); the remaining 7 or 8 vehicles had a GVWR of 10,000 lbs. or less (small vehicle). *Id.* The branch also included at least 8 reserve vehicles to be used when the regular vehicles underwent repair or maintenance; these reserve vehicles were primarily large vehicles. *Id.* at ¶¶ 14–15.

Defendant employed Plaintiff as a "driver/messenger" at its Broadview branch from about January 2016 through November 2018. *Id.* at ¶ 2. Drivers/messengers at the Broadview branch regularly transport coin and currency to and from Milwaukee and Indianapolis five days a week. *Id.* at ¶ 6. During Plaintiff's employment, Defendant could and did assign any vehicle—small or large—to any driver/messenger on any given day. *Id.* at ¶ 21. The record reflects that Plaintiff mostly drove small vehicles and drove large vehicles only around 10 times during his employment. *Id.* at ¶¶ 33, 35.

  **B.**    **Procedural History**

In January 2019, Plaintiff filed this collective action under FLSA and IMWA, alleging that Defendant failed to pay him and other class members in accordance with

2

the statutes' overtime requirements. [1]. Thereafter, this Court granted the parties' request to bifurcate discovery, allowing the parties to first conduct discovery and brief summary judgment on Plaintiff's individual claims. [28]. After completing individual discovery, Defendant has moved for summary judgment. [51].

## II.     Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). The non-moving party bears the burden of identifying the evidence creating an issue of fact. *LeDure v. Union Pac. R.R. Co.*, 962 F.3d 907, 910 (7th Cir. 2020). To satisfy that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 832 (7th Cir. 2019). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on

3

which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

### III. Analysis

Defendant moves for summary judgment, arguing that an exemption available to motor carriers like itself bars Plaintiff's overtime claims under the FLSA and the IMWL. [53]. This Court considers each claim in order below.

#### A. The FLSA

##### 1. The FLSA's Motor Carrier Exemption and the TCA

Subject to certain exemptions, the FLSA requires employers to provide overtime pay for employees who work more than forty hours in a given workweek. 29 U.S.C. §§ 207(a)(1), 213(a)–(b). Relevant here, FLSA exempts employees subject to the Secretary of Transportation's jurisdiction under the Motor Carrier Act (MCA). *Burlaka v. Contract Transp. Servs. LLC*, 971 F.3d 718, 719 (7th Cir. 2020) (citing 29 U.S.C. § 213(b)(1)). The motor carrier exemption is rooted in safety concerns: "It is dangerous for drivers to spend too many hours behind the wheel, and 'a requirement of pay that is higher for overtime service than for regular service tends to . . . encourage employees to seek' overtime work." *Id.* (quoting *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 657 (1947)).

The Secretary of Transportation's jurisdiction extends "over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both[ ] are transported by motor carrier . . . between a place in . . . a State and a place in another State." 49 U.S.C. § 13501(1)(A). Thus, an

employee comes within the Secretary of Transportation's jurisdiction if "the employee is 'subject, at any time, to be[ing] assigned to interstate trips.'" *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 661 (7th Cir. 2011) (quoting *Goldberg v. Faber Indus., Inc.*, 291 F.2d 232, 235 (7th Cir. 1961)).

Federal law, however, circumscribes the scope of the motor carrier exemption: In 2008, Congress passed the Technical Corrections Act, which amended the scope of the motor carrier exemption by designating a class of employees for which the exemption does not apply. Specifically, the TCA provides that "Section 7 of the [FLSA] . . . shall apply to a covered employee notwithstanding [the motor carrier exemption]." SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, § 306(a), 122 Stat. 1572, 1621 (2008). Under the TCA, a "covered employee" means an individual:

(1) who is employed by a motor carrier or private motor carrier . . .

(2) whose work, in whole or in part, is defined

    (A) as that of a driver . . . and

    (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . . and

(3) who performs duties on motor vehicles weighing 10,000 pounds or less.

*Id.* § 306(a), (c). Thus, the FLSA overtime pay requirements remain applicable to drivers covered by the TCA exception, or in other words, those who operate small vehicles in interstate commerce. *Id.*; *see also Washington v. Med-Spec. Transp., Inc.*,

No. 18 CV 3334, 2019 WL 2016259, at *2 (N.D. Ill. May 7, 2019). With this statutory backdrop in place, this Court now moves to the facts of this case.

### 2. Plaintiff Qualifies for the TCA Exception

The parties do not dispute any material facts, including that Plaintiff worked in interstate commerce, that he served as a driver for a motor carrier, and that he drove both small and large vehicles. Their dispute, rather, centers on the single legal question of whether his work on both small and large vehicles—otherwise known as "mixed fleet" vehicles—qualifies him as a "covered employee" under the TCA exception, or alternatively, whether an employee must work *exclusively* on small vehicles to invoke the exception. *See* [53]; [57]. Plaintiff contends that the TCA's definition of "covered employee" includes someone, like him, who drove mixed-fleet vehicles. [57] at 2–6. Not surprisingly, Defendant urges an opposite interpretation of the TCA exception that encompasses employees who drove exclusively small vehicles. [53] at 14.

The Seventh Circuit has not yet addressed how to categorize mixed fleet vehicles under the TCA. The two circuits that have squarely addressed the issue have adopted the position Plaintiff advocates; that is, because the plain text of the TCA provides that an employee need only work on small vehicles "in part" to qualify for the exception, drivers of mixed fleets clearly fall within the exception, and thus, are entitled to overtime pay under FLSA. *Schilling v. Schmidt Baking Co., Inc.*, 876 F.3d 596, 601 (4th Cir. 2017) ("The structure of the TCA exception also makes clear that an employee need only work on smaller vehicles 'in part' to qualify for overtime

6

compensation."); *McMaster v. E. Armored Servs., Inc.*, 780 F.3d 167, 169–70 (3d Cir. 2015) (holding that the TCA exception applies to an employee working on mixed fleet vehicles). The majority of district courts have agreed with the Third and Fourth Circuits that the TCA's plain text contemplates employees who drive mixed fleet vehicles. *See Noll v. Flowers Foods Inc.*, 442 F. Supp. 3d 345, 363 (D. Me. 2020); *Butler v. TFS Oilfield Servs., LLC*, No. SA-16-CV-01150-FB, 2019 WL 177304, at *7 (W.D. Tex. Jan. 11, 2019); *Berry v. Best Transportation, Inc.*, No. 4:16-CV-00473-JAR, 2018 WL 6830097, at *6 (E.D. Mo. Dec. 27, 2018); *Leier v. Lincoln Limousine Brokerage Inc.*, No. 14CV3121PKCVVP, 2018 WL 276345, at *3 (E.D.N.Y. Jan. 3, 2018); *Garcia v. JIA Logistics, Inc.*, No. 16-22870-CIV, 2017 WL 2346149, at *5 (S.D. Fla. May 30, 2017).

For its part, in arguing that the TCA exception covers only drivers who drive small vehicles exclusively, Defendant relies heavily upon the Seventh Circuit's decision in *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 901 (7th Cir. 2009). In *Collins*, the Seventh Circuit considered whether truckers who drove wine across state lines qualified for overtime pay under the FLSA. *Id.* at 896–97. The court's opinion largely focused upon whether the facts of the case met the "interstate commerce" requirement of the motor carrier exemption and is thus irrelevant to this Court's analysis here. *See id.* But in a paragraph at the end of the opinion, the court rejected a similar argument to the one Plaintiff raises here: that because some of the plaintiffs sometimes drove small vehicles, the motor carrier exemption should not apply. *Id.* at 901. Recognizing that the MCA between 2005 and 2008 (the relevant

7

period for *Collins*) limited "motor carriers" to those carrying only large vehicles, Judge Posner, writing for the court, explained:

> Dividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes.

*Id.*

Defendant contends that this paragraph compels the conclusion that Plaintiff falls within the motor carrier exemption because Plaintiff, like the *Collins* plaintiffs, only sometimes drove small vehicles. Not so. As other courts have since recognized, because the facts in *Collins* arose prior to the enactment of the TCA, the *Collins* court had no occasion to consider that the TCA created an express statutory exception to the motor carrier exemption, bringing within FLSA's scope drivers who operated small vehicles "in whole or in part." *E.g.*, *McMaster*, 780 F.3d at 171; *Byers v. Care Transp. Inc.*, No. 13-CV-15174, 2015 WL 5608287, at *7 (E.D. Mich. Sept. 24, 2015). In short, *Collins* pre-dates the TCA, and thus, does not bind this Court's present consideration of the interplay between the TCA, the motor carrier exemption, and FLSA.

Plaintiff also cites to *Jaramillo v. Garda, Inc.*, No. 12 C 662, 2012 WL 4955932, at *5 (N.D. Ill. Oct. 17, 2012). In *Jaramillo*, like here, the court assessed whether FLSA overtime requirements applied to motor carrier employees who drove both large and small vehicles, and ultimately determined that they did not. *Id.* at *4–5. The court found "persuasive" Judge Posner's policy concerns in *Collins* relating to the

division of jurisdiction between different federal agencies, and as a result, "refuse[d] to undergo a week-by-week analysis to determine what regulatory overtime scheme should apply to each individual Plaintiff for each week of work," finding that such a task would be "burdensome." *Id.* at \*5.

Respectfully, this Court disagrees with the *Jaramillo* court's analysis. *Jaramillo* relied upon *Collins*, but as discussed above, *Collins,* in dicta, interpreted an old version of the MCA and did not have occasion to observe that Congress, through its passage of the TCA in 2008, specifically afforded protections to employees who drove small vehicles only "in part." Moreover, *Jaramillo* based its conclusion upon *Collins'* policy concerns about dividing jurisdiction between the Department of Labor and the Department of Transportation. While policy is undoubtedly important, courts cannot place policy above a statute's plain text. *INTL FCStone Fin. Inc. v. Jacobson*, 950 F.3d 491, 499 (7th Cir. 2020).[1]

For these reasons, *Jaramillo* remains in the minority of cases on this issue. *See McMaster*, 780 F.3d at 171 (criticizing *Jaramillo* for applying policy over statutory text; and observing that "[n]either history nor policy . . . can overcome an express change to the statutory scheme."); *Heng Guo Jin v. Han Sung Sikpoom*

---

[1] As always, this Court looks first to the operative legislative text, and asks "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Exelon Generation Co., LLC v. Local 15, International Brotherhood of Electrical Workers, AFL-CIO*, 676 F.3d 566, 570 (7th Cir. 2012) (internal quotations omitted); *Lawson v. FMR LLC*, 134 S. Ct. 1158, 1165 (2014) (courts must give "the words used their ordinary meaning"). If the "statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *United States v. Turkette*, 452 U.S. 576, 580 (1981) (internal quotations omitted); *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) (same). In short, when a "statute is unambiguous, our inquiry starts and stops with the text." *United States v. Marcotte*, 835 F.3d 652, 656 (7th Cir. 2016).

9

*Trading Corp.*, No. 13-CV-6789 CBA LB, 2015 WL 5567073, at *7 (E.D.N.Y. Sept. 21, 2015) (concluding that *Jaramillo* relied "erroneously" upon pre-TCA case law);

The plain text of the TCA exception clearly and unambiguously provides that, if an employee's work involves, at least in part, the operation of small vehicles, the FLSA entitles that employee to overtime pay. Corrections Act § 306(c), 122 Stat. at 1621. The statute thus compels this Court to conclude that drivers of mixed-fleet vehicles qualify under the TCA exception, consistent with the two circuits to have considered this issue, as well as the balance of persuasive authority from other federal district courts. Reading the TCA exception as Defendant advocates—to require exclusive work on small vehicles—would render the language "in whole *or in part*" completely meaningless. This Court will not construe statutory text in this manner. *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1077 (7th Cir. 2013) (instructing courts to give "words and phrases their ordinary and natural meaning and avoid rendering them meaningless, redundant, or superfluous").

Here, because the undisputed record shows that Plaintiff drove mixed fleet vehicles, his Plaintiff's FLSA claim remains viable. Accordingly, this Court denies Defendant's motion for summary judgment on Plaintiff's FLSA claim.

### B. The IMWL

Defendant also moves for judgment on Plaintiff's IMWL claim. The IMWL, like the FLSA, requires overtime pay for employees who work more than 40 hours in a given workweek. 820 ILCS 105/4(a)(1); *Mitchell v. JCG Indus., Inc.*, 745 F.3d 837, 844 (7th Cir. 2014). And similar to the FLSA, the IMWL also contains a motor carrier

carve-out, exempting from its overtime requirements anyone working for "a motor carrier and with respect to whom the U.S. Secretary of Transportation has the power to establish qualifications and maximum hours of service under the [Motor Carrier Act]." 820 ILCS 105/3(d)(7); Almy v. Kickert Sch. Bus Line, Inc., 722 F.3d 1069, 1074 (7th Cir. 2013).

As discussed above, the Secretary of Transportation's jurisdiction extends to employees subject, at any time, to being assigned to interstate trips. Johnson, 651 F.3d at 661; Burkala, 971 F.3d at 719. The undisputed record shows that Defendant constitutes a motor carrier engaging in interstate commerce, and that Defendant expected Plaintiff and its other driver/messengers to engage in trips to other States. Critically, unlike Congress, the Illinois state legislature has not enacted a state-law corollary to the federal TCA that would allow drivers of mixed fleet vehicles an exception to the motor carrier exemption. The motor carrier exemption thus remains available to Defendant under the IMWL, entitling Defendant to summary judgment on this claim.

**IV. Conclusion**

For the reasons set forth above, this Court grants in part and denies in part Defendant's motion for summary judgment [51]. The Court grants the motion as to Count II, Plaintiff's IMWL claim, but denies the motion as to Count I, Plaintiff's FLSA claim.

By April 5, 2021, the parties shall file a status report proposing reasonable case management dates for phase 2 and the remainder of the case. This Court will then set case management dates by separate order.

Dated: March 22, 2021

Entered:

John Robert Blakey
United States District Judge